IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
UNITED STATES OF AMERICA

Harold L. Richardson,
8114 Gorman Ave. 242
Laurel, MD. 20707
Phone No: 301-604-0283
                        Pro Se Plaintiff,

VS

Case: 1:07-cv-00513
Assigned To : Unassigned
Assign. Date : 03/19/2007
Description: RICHARDSON V. JOHN ASHCROFT, ET AL.,

Cash Point "Loan Max",
Mark Gold, in his Individual
and Official Capacity, D.B.A.
"Dominion" Bank of Virginia;
6801 Richmond Highway
Alexandria, Virginia, 22306
Phone No: 703-765-2274
Kaelys Towing R, Truck
Driver, Names unknown;
200- Waterside &
248 Whitsons Run Dr
Stafford, Virginia, 22554
Phone No: 540-285-6691
540-288-8284
                        Respondents, Et., Al.

## CONSPIRACY COMPLANT PURSUANT
USC TITLE 42 SECTION(S) 1981, 1985 ET SEQ.,
**FOR MONETARY DAMAGES**

RECEIVED

FEB 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2

Conspiracy to violate Civil and Constitutional Rights of out of State US Citizens by Respondents that do business in the State of Virginia, under the KU KLUX KLAN ACT Title 42 USC section(s) 1981 EQUAL RIGHTS, Violation of 42 USC 1893 CIVIL RIGHTS, the Civil Rights Act of 1871 Ku Klux Klan Act provides that "[e]very person who under color of any statute, ordinance, regulation, custom, or usage, of any State....subjects, or causes to be subjected, any Citizen of the United States to the deprivation of any RIGHTS, PRIVILEGES, or IMMUNITIES secured by the Constitution and LAWS, shall be liable to the party INJURED...."

The United States Constitution, article '5', '14', section 2, provides that "(N)o person shall be deprived of LIFE, LIBERTY, or PROPERTY, without due process of Law."

## J U R I S D I C T I O N

Jurisdiction is under Title 28 USC section(s) 1331, and 1336 Federal Question and monetary value exceeding $2,000,000.00, 2 TWO Million US Dollars, suffered damages; as deterrents, for violating Citizen's Rights.

## V E N U E

Venue is found upon Dominion Bank for Virginia, Federal Insured, Kealys Towing R, phone number 540-288-8285 traveled Interstate, Cash Point

"Mark Gold" usage U.S. Telecommunications, Television advertisement;
Herein after as Respondents operate their loan sharking businesses not only
limited in the Commonwealth of Virginia. In that the Respondents usage
Interstate Commerce Maryland, District of Columbia, and Virginia, to seize
Citizens of the United States property without due process of Law, in this
case, in the State of Maryland, without licenses, permission from sovereign
authorities which do not allow Loans charging it's Citizens 300 per cent
interest rates, which is a criminal act in other States. Even though, it is
assumed Respondents are permitted to operate with immunities upon
donating pay offs to the Legislative Party for the Commonwealth of
Virginia. Plaintiff has no other Court to bring his grievances that would be
uninfluenced by Respondent's pay off practices currently employed in the
State of Virginia. The Respondent has approximately some 800 eight
hundreds stores conducting this type of business before (5) five days of the
scheduled Court date. The Respondent acted in civil contempt with regards
to due process while Commonwealth of Virginia ORDERED a conference
hearing for February 12, 2007. See exhibit marked "A" attached hereto by
reference , and incorporated herein. It is this Plaintiff's beliefs his
grievances will not be fairly heard in the Commonwealth of Virginia, due to
Respondent's monetary status and reckless disregards to laws even in other

4

surrounding States. Plaintiff avers his Right to Petition the Court in

Alexandria Virginia has been denied in that tribunal whether Respondents

has legal standings to seize property of another's residence of the State of

Maryland, and by which State Law governs the Loan rates in this particular

case. Denied again his fundamental Rights with the Virginia's Clerk's Office

refusing to serve Process to Respondents by asserting that Respondents in

this case has to be served process only by Virginia paid Attorneys, or by

some other party that are allowed to do so; after Plaintiff paid the

Alexandria's Sheriff Department to serve process has also denied him

access Pro se to their Court, and due process along with equal protection of

the Law. With cases pending action in civil contempt and when posed with

that question; "How could they have acted"? Respondent "Cash Point"

responded...it will cross that bridge when they get there....By way of

intimidation Respondent further stated....right now (Plaintiff) must pay

(him)approximately $5,000.00 plus storage fee if he want to see his

automobile again.... Plaintiff avers to further violate rights the Respondent

has added another fee while awaiting Trial date. Which in other

jurisdictions nether parties are allowed to act until the outcome of trial.

Unlike here upon this freehand given by Virginia's legislative does not

afford their hands extending to the surrounding States to participate in

passing laws in other States. This Court may take judicial notices that State

Legislative Personal receive lots cash donations from "Cash Point" 800

stores. And, that it is excepted fireworks are sold in one State, yet forbidden

in another as a crime to cross State Line. Based upon the facts and

circumstances of this case Respondents not only violated civil and

constitutional rights, but Washington DC, and Maryland's lending Laws,

and Regulations as well. The Respondents are currently internationally

advertising and exercising it's business Interstate (without) legislation

conflicting credit rate differs State by State; reference the Federal

Government infers illegal money laundry, loan sharking activity. Only

in the Commonwealth of Virginia this was permitted but not here in the

bordering States. In this case Respondent came to Maryland, and seized

Plaintiff's property while awaiting trial, tribunal on the issues whether Va.'s

interest rates or Maryland's interest rates apply. If Plaintiff has no standings

in a Court of Law, then what grounds allow Respondents to walk on;

Seizing property by use of the Other's agency (Maryland's Department of

Motor vehicle) by US Mailing its' claims; that is forbidden by means for

which Respondent illegally takes property in another State, without due

process of Laws. To -Further complicate property Respondent committed

6

other offenses; by threatening Plaintiff to not appear with

**REPRESENTATION** in Court on February 12, 2007. See attached Petition

"Motion for Restraining Order and Injunction Relief." Which Plaintiff avers

and incorporate attached petition Motion for Restraining Order and

Injunction relief allegations by reference as though expressly rewritten

herein.

## H I S T O R Y  O F  T H E  C A S E

On or about May 2006, Plaintiff while home watching television in the State

of Maryland, happen to see AL Sharpton, a representative of the Community

advertised a commercial, a company that will lend money. Plaintiff called

Respondent by phone that has business of lending in the Commonwealth of

Virginia; for which Plaintiff placed his motor vehicle up for collateral on a

$1,500.00 fifteen hundred dollars loan, though his vehicle's blue book value

was $10,500.00, smaller amount borrowed. Plaintiff paid $400.00 to Loan

Company then learned that the rates was 300% per cent. Plaintiff had given

the Company $400.00 and had thought he owed less then $1,500.00, but the

receipt stated $1,900.00, in less then 30 days. Plaintiff sought legal advice

because he had not signed the loan papers, and unbeknown said loan could

Be illegal in his home State, and by the Federal Government. Upon realizing

the Respondent's loan practices, and without protection of his home State's laws , and regulations. Plaintiff filed a complaint petition asking the State Court to review  Respondents lending methods of charging Maryland's Residents 300% per cent interest rates when credit cards, and other lenders has to charge per cent interest rates according to the State, One resides. Also Plaintiff sought the legality of the contract entered. .See Petition attached hereto, enforced. While awaiting conference hearing on February 12, 2007 at 9:30 am. Plaintiff avers these Respondents had violated his Civil Rights as defined by the Civil Rights Acts of 1871, and the United States Constitution.

## CAUSE OF THIS ACTION

Before hearing date on the early morning of February 7th, 2007; Respondent "Mark Gold" had his Repo Men names unknown come to the State of Maryland by Toll Truck seized Plaintiff's motor vehicle (Property) before hearing/ Trial due date seize by thief a Maryland automobile in the Snow, and dragging Plaintiff a half a city block, until car's tire ran over his toes. Plaintiff tried at that time to distinguish who were the people stealing his vehicle and other property. To no avoid, the man that was driving toll

7

truck yelled... he's the Repo-Man; then Plaintiff pleaded for his personal

belongings one Lap Top computer, Camera, and Four (4) different heart

medications that helps him  stay alive. If it wasn't for the snow the lumps

and bumps would  been more serious. Maryland laws forbid, and do not

allow loan sharking business of cash point, doing business of this nature in

it's State. And, if so it must seek judicial clearance merely appearances of

illegal activity that property Repossession has to be licensed, and bonded, in

the State of Maryland . On February 7th, 2007, Plaintiff called, filed too

Maryland's Police Department seeking names whom allowed Cash Point

Virginia authority to operate , and circumvents its' laws, rules, or

regulations governing seizing personal property mechanical tools,

medication, lap top computer, and Peoples automobiles registered in the

State of Maryland , with the charging its residents 300% profit

 on anything. As of the filing of this complaint Cash Point was not given

permission in Maryland, nor Virginia to highjack said property solely

Belonging to the Plaintiff until at least out come of those legal proceedings

before the Commonwealth of Virginia. Further confronting by phone

communication the aforementioned  to MARK GOLD... Plaintiff was told

that he had to give approximately $4,750.00 to gain back his property, and

possession of his motor vehicle taken by Cash Points employees Repo

9

Men....illegally in the State of Maryland on Maryland's soil, they needs no

body's permission to do  so it's illegal business in the State of Maryland.

Though, Cash Point changed  names , and included their name to

Maryland's Titles in the State of Maryland, plus use the United States mail

to finish conducting their loan sharking business. During the course of Cash

Point depriving your Plaintiff's freedom to possess his own personal

property they also afforded no due process rights nor the Constitutional

Right to address the Court of grievances afforded to other Citizens

in like situations. Without understanding this new world of being

deprived of personal property , Alexandria's Sheriff office returned

Summons stating no such Business during business as Cash Point;  on that

same writ "Dominion" states they D.B.A. "Cash Point" and, Cash Point has

claimed, it's supremacy claim shall induce denial of due process' and other

Rights of properties.  Plaintiff sort help from others concern parties (see

affidavit attached and incorporated herein) and was verbally threatened. .

."if he comes to court in Virginia on February 12, 2007, he would be

arrested and thrown in jail"...alleging by Telephone his company find drugs

in automobile stolen from Plaintiff in the State of Maryland, by Cash Point's

Employee (REPO   MAN), and that Plaintiff will not ever see the light of

day if he comes to court in Virginia. Not only Mark Gold threatened

Plaintiff by false innuendos but that his company owns the Courts in

Virginia; that his company does, and can do what ever it wants with

Plaintiff's personal property, and nothing could be done about it in the

Commonwealth of Virginia. Plaintiff being fearful plus intimidated by Mark

Gold's statements, upon threats on his life, with lost of his property filed

this complaint in US Federal Court, a Court of high standards when two

sovereignties having conflicting rules, and regulations; can not be

intimidated by Gangster's kickbacks or Loan sharking (illegal)

businesses operating in part of the United States. Plaintiff avers <u>again his</u>

<u>Due Process Rights</u> were <u>violated</u>, and are currently being violated.

Respondent's conversation slandering Plaintiff's character claiming Plaintiff

"had drugs in his possession in his vehicle" upon Cash Point searching his

car after stealing same from the State of Maryland, before outcome of the

court's case. This Court can take judicial notice Cash Point are not allowed

to lend high rates in the State of Maryland, what is so called payday loans.

The Respondents circumvented Maryland's rules, and standings, against

Payday loans, as a part thereof; Seizing personal property by means which

they wholly knew were with disregards of Maryland's legislative party.

Seizes property anyway under payday lending schemes to still meet their

greedy ends. Plaintiff's grievances must be redressed by Federal Courts,

whereas in this case the Respondents and it's co-conspirators the State

Circuit Court Clerk, Virginia Legislative Body; and the State Sheriff

Department allows "Cash Point" this freehand to illegally circumvent the

United States Laws by means as here. The legislators fail to act against

illegally known activities done by big money corporations "Cash

Point" donors of large funds during fund raising operation within the

Commonwealth against non-citizens thereof; granting badges of immunity.

Plaintiff avers heretofore being fearful of the powers given Cash Point in

Virginia, are depriving him of his Rights to petition that Court. Naming

Cash Point based in part Respondent "Mark Gold's authority" upon him

Asserting his arson power over that Court's forum. See State Court's Motion

attached and incorporated herein for your review. Which raised issues of

grave legal concerns instead pass on, and Respondent was not ordered

respond to Complaints. These Respondents still allowed to practice it's

business in Plaintiff's State, as if there are no complaint, civil contempt of

court; slandering characters alleging drugs possession, denial rights to due

process, and in this case circumstances without being afforded opportunities

or acknowledgement of a knowingly signed agreement between parties that

can not be brought before depriving Citizens of property, and property in
another State, which has already legislated 300%  can not charge
Maryland's citizens, or to deformation of character, slander, accusing drug
addition, denial of Due Process, verbally threatening folks by telephone,
intimidating Your Plaintiff with statements "if comes to Virginia's Court he
will be arrested. Any business with this much monopoly over any court, and
having not to answer Court complaints or adhere to court's process; denies
access to the Court, and equal justice under the law. Over and over Mark
Gold kept threatening that Plaintiff do not know who he is, and that he
would ruin Plaintiff's life, and if he knew what's better for him, he better
not show up in Court. Allegation(s) by Mark Gold plans to plant drugs in
Plaintiff's automobile if appearing in Court or further pursuing rights
seeking redress for grievances or torts against Cash Point, in the
Commonwealth of Virginia. Plaintiff avers Circuit State Court Clerk's
Office failed to serve process, even though, Plaintiff had mailed
several copies by US Mail. Plaintiff avers the State Sheriff failed to permit
process, though, Cash Point's US Mailing address listed them in the City
of Alexandria Virginia, all in conspiracy to violate Plaintiff's constitutional
rights to be heard in the Commonwealth of Virginia, to have his grievances
addressed in the State of Virginia Court of Law.

13
## **D E F A M A T I O N   O F   C H A R A C T E R**

On evening of February 7th, 2007, approximately 4 pm. Plaintiff sort aid
and assistance from his Employer, by telephone called the office of Cash
Point Mark Gold advised Plaintiff's Assistance that he would personally
Destroy his world if he continued to aid and assist Plaintiff's cause. And,
further if Plaintiff were to show up in Court on February 12, 2007; he would
be arrested because "Cash Point" (we) found drugs in that car, and (He)
Mark Gold knows everything about Plaintiff, even his drug usage. And
stated that perhaps if Plaintiff would have not been busy paying for
Assistance filing against them he would have had money to pay (me) Mark
Gold, my money. Plaintiff avers heretofore, Mark Gold's bogus scandalous
inscription of casting slurs on Plaintiff's reputation with someone's
Representative, in this case Mark Gold made such inscription of character to
Plaintiff's Supervisor, and his Employer which has caused intentionally
such slander with irreparable harms unlikely ever undone, the very next day
Plaintiff was order to take urine tests. Mark Gold's remarks shredded like
wild fire throughout Plaintiff's place of employment,  to other co-workers.
Being mentally damaged by Mark Gold's bogus statements deliberately
designed as means to intimidate keep us out of Court and deny legal

14

Assistance. Plaintiff aver State Court Clerk's Office and Sheriff's department advised him that he needed to hire an Attorney of Virginia, to even serve process; by rights of the United States Constitution article 14, section 2, prohibits special privileges and immunities. Respondents has violated Plaintiff's civil rights as defined by Civil Rights acts of 1871, and the US Constitution.

Called untrustworthy due to Mark Gold's absurd defamation(s) and his assumption money paid Attorney fees upon challenging outrageous interest rates. Whereas before Mark Gold's wholly false allegations, and defamation of character stated for other reasons. Plaintiff was rated with high regards but now psychologically devastated. Mark Gold's destructive threats to Plaintiff's legal help further created to shutoff any help in bringing these Averments to Court. These trammeling of significant personal, property rights has caused substantial damages to this Plaintiff. For which every threatening word was tape recorded on February 7th, 2007. Also the overtones or undertones suggesting what's going to be done to Plaintiff and his Assistance upon taking this Company to Court. Listening to the tape recorded conversations Mark Gold repeatedly referring "You do not know who I am", ...I could ruin you". .unquote.  Upon hearing Mark Gold's

remarks one can not but think there life might be in danger.

## ASSAULT AND GRAND THEIF AUTO

On morning of February 7th, 2007, the Respondent Kaelys Towing R 540-288-8285 crossed State lines into the State of Maryland, to repossess Plaintiff's property a 1999 Nissan Maxima, in Prince George County. While Towing said vehicle Plaintiff asked Tow Truck Driver in unmarked Black Truck what was he doing to Plaintiff's vehicle,... Tow Truck began accelerating faster while Plaintiff running beside truck with hand on handle without truck coming to a stop. The Unknown Truck Driver acting on behalf of Dominion Management During Business As "Cash Point" yelled with windows rolled close that he is repo-ing vehicle. Plaintiff knowing his property i.e. vehicle in question is before the State Court in Virginia; he asked humbly could he please retrieve his medication(s) other property only belonging to him inside that vehicle. 1 laptop computer, digital camera, and other valuables including some mechanical tools. Driver's responded by pulling the truck off faster causing the rear wheel of his own car in tow run over his right foot toes. Then proceeded south bound on to highway interstate 95. Though minor injuries, but not as injured or as painful as having his constitutional rights violated. Thereupon calling Prince George

15

County Police Department of Maryland, reporting his rights were violated,

property taken, and injuries. To no avoid, Police informed that description

of a Black Tow Truck unmarked probably was repossession people, and

they had two hours to contact Maryland authorities upon if permitted.

The only remedy of these matters would be submitted in Civil Court.

Nothing local police could do correct violation(s) of Civil/Constitutional

Rights violation being boot shoe were worn, and that Plaintiff did not want

to go to hospital, Plaintiff had contributed in the injuries to his own foot by

Running with the truck. If Truck did not have Maryland's Licensing/

Authorized to repo autos in the State of Maryland. It is a crime of auto theft.

Unbeknown to Plaintiff the identity of the Tow Truck, Plaintiff received a

Phone call from representative of towing service seeking $5,000.00 for the

return of Plaintiff's property at some undisclosed location in the State of

Virginia, with phone number 540-288-8285 that had not gained permission

from the State of Maryland, as are required. Plaintiff made several attempts

to return 540-288-8285 phone call, no one would answer.

Plaintiff aver not only violations of civil, constitutional rights been

violated, these Respondents are afforded immunities from he being

assaulted by said Tow Truck Driver's actions when asking them why taking

property 5 five days before court hearing date on matters in question; again

presented then to the Commonwealth of Virginia, to further Deny Due

process rights. See State Court's order attached as incorporated herein by

reference into these proceedings. See also Petition attached hereto and

incorporated herein as rewritten as averment to these proceedings for your

review with the same force and effects as set force therein. With complete

disregards to the judicial State system of Virginia, these Respondents are

allowed to not only violate individual rights, but other State's sovereignties

rules, regulations requisite to  the State of Maryland, which do not allow

this business of long strong arm loan sharking ferociously crossing other

State Lines jurisdictions. In that, Maryland require licensing, bailment to do

so. In this case these Respondent's acts of  tyrants circumventing all laws,

civil, and individual constitutional rights. Though, as here they are granted

immunities in the State of Virginia, that are not allowed by the United States

Constitution of the United States.

**The United States Constitution article 14, section 2, prohibits special**

**privilege sand immunities.**

## A T T O R N E Y  F E E S

Plaintiff incorporate the above allegations by reference although expressly

rewritten herein.                                    17

Plaintiff are entitled to an award of Attorney Fee under Title 42 U.S.C. Sec.

1988; WHEREFORE Plaintiff Pray for the Following relief:

    1. A Judgment in the principal amount $2,000,000.00 dollars,

damages actually incurred by Respondents, the exact punitive and

compensatory damages amount to be proven at Trial.

    2. An express determination affirming Plaintiff's privileges

uninjured.

    3. An award order injunction stating the return of all properties

seized monetary/punitive damages suffered from the actions of

the Respondents.

    4. An award of interest, costs, and a reasonable Attorney's

fee after one appointed, or one willing to represent this cause.

    5. For such other and further relief as this Court deems just

equitable.

RESPECTFULLY SUBMITTED the _25_ day of February 2007, at

Washington DC.

Respectfully Submitted

Harold L. Richardson, Pro Se          18

8114-Gorman Avenue 242
Laurel Maryland, 20707


I hereby declare that a copy of the foregoing Complaint was mailed to the

Respondents on this ___, day of February, 2007, to the following:

    1. Cash Point , at 6801 Richmond Highway
       Alexandria, Va., 22306

    2. Mark Gold, at  6801 Richmond Highway
       Alexandria, Va., 22306

    3. Dominion Management, at 6801 Richmond Highway
       Alexandria, Va., 22306

    4. Kaelys Towing, at  248 Whitson Run
       200- Waterside
       Stafford, Va., 22554


RESPECTFULLY SUBMITTED

by: Harold L Richardson


19

# Circuit Court of Alexandria
# Virginia



| | | |
|---|---|---|
| **Judges** | | **Courthouse** |
| **Donald M. Haddock** | | **520 King Street** |
| **John E. Kloch** | | **Alexandria, Virginia** |
| **Lisa Bondareff Kemler** | | **22314-3164** |
| | | **(703) 838-4123** |

January 22, 2007

Harold Richardson                          Loanmax Cash Point
8114 Gorman Avenue #242                     6801 Richmond Highway
Laurel, MD  20707                          Alexandria, VA  22306

RE: Richardson, Harold
      vs
      Loanmax Cash Point

Docket: CL06004028

<u>NOTICE</u>

A Status Conference has been scheduled for the above-captioned case on February 12, 2007 at 9:00 AM in Courtroom No. 2 on the fourth floor of the  Courthouse at 520 King Street for the purpose of setting a trial date and entering a pretrial order.


You may call (703) 838-4123 to set a trial date and not appear.  However, this must be done more than 48 hours before the hearing date and the completed agreed pretrial order must be returned to the Court before the date of the Status Conference. Failure to appear will result in a dismissal of the case.  If the parties do not present an agreed pretrial order at the Status Conference, the Court will enter the Uniform Pretrial Scheduling Order in accordance with Rule 1:18 of the Rules of the Supreme  Court of Virginia.  Objections to the entry of the Uniform Pretrial Scheduling Order will be heard at the Status Conference.


An agreed pretrial order which differs from the Uniform Pretrial Scheduling Order shall use the Uniform Pretrial Scheduling Order form and/or addenda thereto  so that changes are quickly ascertainable by the Court.



Exhibit "A"

COMMONWEALTH C   RGINIA:
    In the Circuit Court of the City of Alexandria    Case No : CL06004028

STYLE:  RICHARDSON, HAROLD V LOANMAX CASH POINT

Serve:  Loanmax Cash Point
      6801 Richmond Highway
      Alexandria, VA 22306

Returns shall be made hereon, showing service of Summons Issued the 29th day of November, 2006
with the copy of the complaint, filed the 27th day of November, 2006

SERVING OFFICER
Stan G. Barry, Sheriff
Fairfax, Virginia

DEC 0 1 2006

## Proof of Service

[ ] IN PERSON   Executed by delivering a true copy of the (within/attached) process to the within named individual IN PERSON.

[ ] FAMILY     The within named individual could not be found at his/her usual place of abode, I executed the (within/attached) process by leaving a true copy of the same with _____, who is a  MEMBER of the individual's FAMILY and over the age of sixteen  years  and explaining its purport.

[ ] POSTED    Neither the within named person nor any person who is a  member of the person's family,  and over  the age of sixteen years, could be found at the person's usual  place of abode, so the (within/attached) process was executed by leaving  a  true copy of all the same, in writing, POSTED  on the front door or such  other door  as appears  to  be the main entrance  of usual place of abode, address listed above.

[ ] RA/CO     Executed by delivering a true copy of the (within/attached) papers to_____ in person, who is the_____ of the within named Corporation/or _____ Department in the City of Alexandria, Virginia.

[ ] FOR GARNISHMENT OF FEDERAL WAGES ONLY:
        Pursuant to§ U.S.C. 5520a, service by certified or registered mail, return receipt requested.

[ ] NOT FOUND  The within named person could NOT BE FOUND in my city of Alexandria, Virginia, after diligent  search, and  does not  maintain a usual place  to  abode  therein, and  the (within/named) process could not be served in my jurisdiction.

RESULTS OF SERVICE NOT FOUND

    [ ] Moved--address unknown _____
    [ ] Information indicates _____
    [ ] A resonable effort has been made to locate the within-named person(s). Additional attempts will require supplemental information supplied by the Plaintiff. Attempts noted on original process.
    [ ] Insufficient time was allowed upon presentment of this process for service.

Done in my City/County of_____, Virginia this____Day of_____,20___at___:___.

I hereby acknowledge receipt in person
the above referenced Legal Process

Sheriff

_____
Signature      Date
(Defendant/Witness/Other)

By_____
     Deputy Sheriff

Copy to Retu



Exhibit `B`

# Commonwealth of Virginia



Case No. CL06004028

# SUMMONS

## TO THE SHERIFF: YOU ARE HEREBY COMMANDED TO SERVE:

Serve:  Loanmax Cash Point
        6801 Richmond Highway
        Alexandria, VA  22306

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**Appearance in person is not required by this summons.**

Done in the name of The Commonwealth of Virginia, the 29th day of November, 2006.

Mitchelle Samuels
Deputy Clerk

Edward Semonian
Clerk, Circuit Court
520 King Rm 307
Alexandria, VA  22314
(703) 838-4044

Sheriff - Non-Alexandria

Copy to Return

EXhibit "B1"

**COVER SHEET FOR FIL   ) CIVIL ACTIONS**

COMMONWEALTH OF VIRGINIA

Case ........ *CL06000 4028*

(CLERK'S OFFICE USE ONLY)*

ALEXANDRIA, VIRGINIA ........................................ Circuit Court

Harold L Richardson ............ v./In re:   Cash Point/ Loanmax 701-765-2274

PLAINTIFF(S) ............................ DEFENDANT(S)

6801-Richmond Highway, Aleandria Va,22306

I, the undersigned [x] plaintiff [  ] attorney for plaintiff hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

| | | |
|---|---|---|
| [ ] Accounting | [ ] Contract Action | [ ] Judicial Review |
| [ ] Administrative Appeal | [ ] Contract Specific | [ ] Landlord/Tenant |
| [ ] Adult Protection |     Performance | [ ] Mechanics Lien |
| [ ] Aid and Guidance | [ ] Correct/Erroneous State/Local | [ ] Medical Malpractice |
| [ ] Annexation |     Taxes | [ ] Motor Vehicle Tort |
| [ ] Annulment | [ ] Counterclaim | [ ] Name Change |
| [ ] Appeal Decision of ABC Board | [ ] Court Appointment of | [ ] Order to Sever |
| [ ] Appeal Decision of Board of Zoning |     Guardian (Competency) | [ ] Partition |
| [ ] Appeal Decision of Comp Board | [ ] Cross Claim | [x] Petition |
| [ ] Appeal Decision of Employment | [ ] Custody/Visitation/Support/ | [ ] Product Liability |
|     Commission |     Equitable Distribution | [ ] Quiet Title |
| [ ] Appeal Decision of Local | [ ] Declaratory Judgment | [ ] Referendum Elections |
|     Government | [ ] Declare Death | [ ] Reformation of Trust |
| [ ] Appeal Decision of Marine Resources | [ ] Delinquent Taxes | [ ] Reinstatement of Driving |
|     Commission | [ ] Detinue |     Privileges |
| [ ] Appeal Decision of Voter | [ ] Divorce | [ ] Reinstatement (General) |
|     Registration | [ ] Ejectment | [ ] Removal |
| [ ] Appointment of Church Trustee, | [ ] Encumber/Sell Real Estate | [ ] Separate Maintenance |
|     Substitute Fiduciaries | [ ] Enforce Vendor's Lien | [ ] Standby Guardian/ |
| [ ] Approval of Right to be Eligible to | [ ] Escheat |     Conservator |
|     Vote | [ ] Establish Boundaries | [ ] Termination of Mineral |
| [ ] Asbestos Litigation | [ ] Expunge |     Rights |
| [x] Attachment | [ ] Forfeiture of U.S. Currency | [ ] Unlawful Detainer |
| [ ] Bond Forfeiture Appeal | [ ] Freedom of Information | [ ] Vehicle Confiscation |
| [ ] Child Abuse and Neglect - Unfounded | [ ] Garnishment | [ ] Will Contested |
|     Complaint | [ ] General Tort Liability (other | [ ] Writ of Certiorari |
| [ ] Civil Contempt |     than motor vehicle) | [ ] Writ of Habeas Corpus |
| [ ] Claim Impleading Third Party | [x] Grievance Procedures | [ ] Writ of Mandamus |
|     Defendant | [ ] Guardian Appointment | [x] Writ of Prohibition |
| [x] Complaint - (Miscellaneous) | [ ] Impress/Declare a Trust | [ ] Writ of Quo Warranto |
| [ ] Compromise Settlement | [x] Injunction | [ ] Wrongful Death |
| [ ] Condemnation | [ ] Interdiction | [ ] Other |
| [ ] Confessed Judgment | [ ] Interrogatory | |
| [ ] Conservator of Peace | [ ] Intentional Tort | |
| [ ] Construe Will | [ ] Judgment Lien-Bill to Enforce | |

[x] Damages in the amount of $ 1,500.00 ........................... are claimed.

November 27, 2006 ....................................

DATE ............ [x] PLAINTIFF [  ] DEFENDANT   [  ] ATTORNEY FOR [  ] PLAINTIFF

    [  ] DEFENDANT

Harold L Richardson

PRINT NAME

8114-Gorman Avenue 242, Laurel Md., 20707   301-6040283

ADDRESS /TELEPHONE NUMBER OF SIGNATOR

* See reverse side for Civil Action Type Codes
  - for Clerk's Office Use Only

IN THE STATE DISTRICT COURT FOR
THE COMMONWEALTH OF
VIRGINIA

Harold L. Richardson,
8114 Gorman Ave. 242
Laurel, MD. 20707
                         Pro Se Petitioner,

VS                                      Case: _CL0600 4028_


LOANMAX-Cash Point,
6801 Richmond Highway
Alexandria, VA. 22306
                         Respondent.


## MOTION FOR RESTRAINING ORDER
## AND INJUNCTION RELIEF


COMES NOW Pro se Petitioner, Harold Richardson, moves this

Court for Stay order, and injunction relief staying Respondent hereinafter,

As Lending Company, from seizing Petitioner's personal property, a 1999

Nissan, Automobile, in the State of Maryland. Based upon in part, but not

limited thereto, whether this Court's jurisdiction is solely found here charge

Maryland's residence consumer 300% THREE HUNDRED per cent interest

rate on a $1000.00 ONE THOUSAND Dollars loan; are or are not legal

Loans binding under only Virginia's interest rates, when that loan was

advertised and solicited in the State of Maryland? And than be solely

governed by the highest interest rate, and laws of the Commonwealth of

Virginia; or of both States?  The conflict herein are as followed:

Which State interest rate must be controlling here, the lowest

 or the highest of both States, based upon papers attached hereto, and

 incorporated herein, in part, for this Court's review.

 Whether coercion of Maryland's consumer to pay high 300% interest rate

without regards to Maryland's Low loan rate of 6% per cent  Laws, rules, or

regulations in force and effect at time of loan had shot gunned Petitioner's

Agreement and his Mental ability to sign Loan Papers, that violates

Maryland's consumer protection Lending rules, by Laws even of the Federal

standards, and inferences of such a high interest rate being charged without

consumer protection, in the Commonwealth of Virginia.  Petitioner avers

that he should have been given the same protection afforded to Marylanders,

in this State of Virginia, instead of being coerced by Statesmen  Al

Sharpton's  TV 's advertisement, thereby under duress, constraint, and

another victim of this Commonwealth's Loan Sharking criminal scheme.

Petitioner avers he only signed a $1000.00 ONE Thousand dollar loan, and

Respondent charging papers alleges $1,500.00, Fifteen Hundred dollars was

signed with 300% per cent interest rate on $1,500.00 dollars, in lieu thereof,

$1,000.00 dollars that was actually signed for repayment fee.

Petitioner avers Respondent has placed BOUNTY HUNTERS in the State

Of Maryland to seize a 1999 Nissan, automobile from Petitioner's

Possession in the State of Maryland.

Petitioner request this Honorable Court to intervene by restraining order

Staying Respondent from seizing his 1999, Nissan, Automobile until at least

This Court's ruling of above aforementioned Motion for Injunction relief.

Petitioner states this loan was coerced by Mr. Al Sharpton, a famous Public

Official representative, now of this Loan Company. And ask this Court was

This Loan a product of the criminal act of loan sharking? The Loan was

sought in the State of Maryland by calling a 1-800 number, and, is it

controlled by the Lending rates of the State of Virginia; or Maryland?

Though the Federal Government inferred such high interest rates in this case

to be criminal acts of Loan Sharking.

The Petitioner seeks injunction relief and review of this Loan Company's

practice of lending Money in the State of Maryland, using solely Virginia's

Laws, and high ranking Public Officials to procure such ends. At all times

Petitioner avers he was not given due notices this Loan would be inferred by

the Federal Government (criminal) loan sharking or that some part thereof

could be wrongful against the laws of the United States. In that, he did not

know 300% per cent interest rate shall be 900% per cent $1,500.00, in three

months  without signing. In other words said Loan would be doubled and

his property taken by Bounty Hunters before repayment of the $1,000.00

Dollar Loan.

Petitioner avers that criminal loan sharking operations are being allowed in

The State of Virginia, against the Laws of the United States, and the Loan

Laws of the State of Maryland, in the Commonwealth of Virginia. A loop

hold known by the Perpetrators and Mr. Al Sharpton. Petitioner further

avers that Maryland residence were target victims coerced by Statesmen Al

Sharpton, to believe there rights were  protected by said Public Official's

endorsements and advertising Loans free of  illegal inferences with Loan

protection afforded to others in like situations of over charging interest rates

to Maryland residence in the State of Virginia, without regards to

Maryland's rules and Loan protection(s). This question arise out of both

States are not equally settled on Loan interest rates charged in this case on

Loans where one (1) allows consumer to pay higher interest rates, and the

other do not. Which State loan rate shall be followed here, based upon the facts and circumstances of this case between Petitioner and Respondent in Virginia, whether said Loan unsigned were legally binding free of coercion, on a $1,500.00 dollar loan to this Maryland residence; and which sovereign Authority rule. See UNSIGNED AGREEMENT attached hereto.

WHEREFORE, Petitioner seeks injunction relief from Respondent Wrongfully seizing a 1999, Nissan, automobile personal property belonging to the Petitioner, in the State of Maryland, contrary to the general rule Governing Loans of his State, based in part that he did not sign a contract for $1,500.00 dollars at 300% per cent interest rate, and would not have done so knowingly or intentionally relinquish possession of his property for such an amount willfully. Petitioner avers he thought a 3% or 30% thirty per cent interest were being charged and no where near 300 per cent designed to straight out take or keep good Folks property for so few. Petitioner avers he had no Ideal he could be charged 300% per cent legitimately in the United States. Definitely not by the means applied Hereupon, Lending Company using a Well noted Doctor, Politician, a trusted Statesmen, to bamboozle the poor Out of their property this way. Petitioner's averment the practice employed in Virginia's lending rules by cannery deception in consummating 300% of anything must be wrongful

pray upon the haves NOT certainly criminal in every State of this Union.

Again wherefore, Petitioner avers had he not been persuaded by Mr. Al

Sharpton's appearances and input, he would have not taken an

underhandedness Loan .But for believing it to be true with his State's

protection and Mr. Al Sharpton's advertisement nothing seemed to be

wrong. Plus upon knowing of Virginia's loop hold in the Law, he could not

Have fallen pray to this Loan Sharking scheme, when at all times he thought

Maryland's Loan Laws was the controlling Entity. Therefore, based upon

The foregone; Petitioner request that this said Motion Be it all

things GRANTED, and the Respondent seizes naught.

RESPECTFULLY SUBMITTED


Harold L Richardson, Pro Se Petitioner.


## CERTIFICATION OR SERVICE

I, Harold L. Richardson, Pro Se Petitioner DULY hereby certify under the

penalty of perjury. Declare on this 27 day, of November, 2006, mailed by

US Mail, copy of Motion for Restraining Order to Respondent LOANMAX

CASH POINT' at 6801- Richmond Highway, Alexandria, VA. 22306. BY:

Harold L Richardson, Pro Se.

Dominion Mgt Service DBA CashPoint
6801 Richmond Hgwy
Alexandria, VA 22306
703-765-2274

HAROLD RICHARDSON
8114 GORMAN AVE 242
MT LAUREL, MD 20707

| ACCOUNT SUMMARY | | PAYMENT SUMMARY | | BALANCE SUMMARY | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | TL1310 | MINIMUM PAYMENT | $382.23 | PREVIOUS BALANCE | $1,939.90 |
| CREDIT LIMIT | $1,500.00 | PAYMENT DUE | $422.13 | CURRENT ACTIVITY | ($400.00) |
| AVAILABLE | $0.00 | PAYMENT DUE DATE | Immediately | FINANCE CHARGE | $382.23 |
| STATEMENT DATE | 6/30/2006 | PAST DUE AMOUNT* | $39.90 | **NEW BALANCE** | **$1,922.13** |

*MAIL PAST DUE AMOUNT IMMEDIATELY TO PREVENT DEFAULT ON YOUR LOAN. PLEASE MAIL THE MINIMUM PAYMENT WITHIN FIVE DAYS OF THE PAYMENT DUE DATE TO ALLOW TIMELY DELIVERY.

*PLEASE CALL FOR PAYOFF AMOUNT.

### TRANSACTION SUMMARY

| TRANS DATE | POST DATE | TRANSACTION DESCRIPTION | REFERENCE NUMBER | AMOUNT | |
|---|---|---|---|---|---|
| | | | | CHARGES | CREDITS |
| 6/2/2006 | 6/2/2006 5:52:25 PM | Cash | 20071 | $0.00 | $400.00 |
| 6/20/2006 | 6/20/2006 12:01:00 AM | Interest | 29299 | $382.23 | $0.00 |

### PERIODIC FINANCE CHARGE SUMMARY

| AVERAGE DAILY BALANCE | DAILY PERIODIC RATE | DAYS IN CYCLE | FINANCE CHARGE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|
| $1,500.00 | 0.8219% | 31 | $382.23 | 300.00% |

---

**PLEASE DETACH THIS PORTION AND RETURN WITH PAYMENT**

| ACCOUNT NUMBER | | TL1310 |
|---|---|---|
| *MAIL PAST DUE AMOUNT IMMEDIATELY TO PREVENT DEFAULT ON YOUR LOAN. PLEASE MAIL THE MINIMUM PAYMENT WITHIN FIVE DAYS OF THE PAYMENT DUE DATE TO ALLOW TIMELY DELIVERY. | | |
| NEW BALANCE | $1,922.13 | |
| PAYMENT DUE DATE | Immediately | CURRENT PAYMENT DUE    $422.13 |

## Please call for payoff amount!  Make money orders payable to Dominion Mgt Service DBA CashPoint.  Do not send cash.

HAROLD RICHARDSON
8114 GORMAN AVE 242
MT LAUREL, MD 20707

Amount Enclosed    $

Dominion Mgt Service DBA CashPoint
6801 Richmond Hgwy
Alexandria, VA 22306
703-765-2274

**MOTOR VEHICLE EQUITY LINE OF CREDIT AGREEMENT – VERSION VA1003**

| LENDER: | BORROWER: |
|---|---|
| Dominion Mgt Service DBA CashPoint | HAROLD RICHARDSON |
| 6801 Richmond Hgwy | 8114 GORMAN AVE 242 |
| Alexandria, VA 22306 | MT LAUREL, MD 20707 |
| 703-765-2274 | (301) 604-0283 |

## Disclosure Made in Compliance with Federal Truth in Lending Act.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate: | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled. |
| **300.00%** | A.2 **$369.90** | A.3 **$1,500.00** | A.4 **$1,869.90** |

| Payment Schedule | Description of Pledged Titled Personal Property. | | | | DATE MADE 4/29/2006 |
|---|---|---|---|---|---|
| 1 Payment(s) of $1,869.90 will be due beginning on 5/29/2006 | Year 1999 | Color Teal | Make Nissan | Model Maxima | Loan Number TL1310 |
| | License No. 7BRZ39 | VIN JN1CA21D3XT811956 | | Title Certificate Number 36544933 | S. S. Number 577666421 |

| Maturity Date |
|---|
| 5/29/2006 |

In this Motor Vehicle Equity Line of Credit Agreement ("Agreement"), the words "you" and "your" mean each and every borrower who signs this Agreement. "Account" or "MVELOC" means your Motor Vehicle Equity Line of Credit account with Dominion Mgt Service DBA CashPoint The words "we", "us" and "our" refer to Dominion Mgt Service DBA CashPoint

1.      Using the Account. Once an account is established, you will be allowed to take cash advances from this account up to the credit limit established, at the Dominion Mgt Service DBA CashPoint  Branch where this Agreement is executed. By signing this Agreement you agree to all terms and conditions contained herein.

2.      Monthly Payment. Each month you must pay, in cash, money order or certified funds, at least the minimum monthly payment shown on your statement by the due date indicated. You may, of course, pay more frequently, pay more than the minimum payment, or pay the New Balance in full. If you make extra payments or larger payments in one month, you are still required to make at least the minimum payment each month your account has a balance. The minimum payment is comprised of all earned Finance Charges, plus the amount of any prior minimum payment that you have not paid. AS THIS LINE OF CREDIT HAS A HIGH INTEREST RATE, YOU ARE ENCOURAGED TO PAY AS MUCH AS YOU CAN EACH MONTH TO REDUCE THE AMOUNT YOU OWE.

3.      Application of Payments. Your payments will be applied by us in the following manner. If your payment is large enough, we will apply it to pay your New Balance in full. If your payment is greater than your New Balance, we will apply the excess to any new cash advances occurring after the Closing Date shown on your billing statement. If there is any excess beyond these amounts, the excess will be shown as a credit balance on your next billing statement for which you may by written request get a refund. If your payment is less than the New Balance, we will apply the payment first to any unpaid Finance Charge with the balance, if any, to the remaining balance.

4.      Grace Period.  There is no grace period on finance charges.

5.      Calculation of Finance Charges.  We figure the FINANCE CHARGE on your account by applying the periodic rate of 25.00% (this is an ANNUAL PERCENTAGE RATE of 300.00%) to the "average daily balance" of your Account (including current transactions). To get the average daily balance, we take the beginning balance of your Account each day, add any new cash advances, and subtract any payments or credits and unpaid Finance Charges. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the average daily balance.

6.      Other Charges. You agree to pay us an lien recording fee of $20.00. for the state of Virginia or a lien recording fee of $11.00 for the state of North Carolina. This fee is not refundable and will be charged to your account on the first monthly billing statement.

7.      Security Interest. You hereby grant us a security interest pursuant to the Uniform Commercial Code in the Motor Vehicle, all accessories and accessions to the Motor Vehicle, and all proceeds related thereto, including all insurance proceeds or refunds of insurance premiums related to the Motor Vehicle (all such property is herein referred to as "Collateral").

8.      Right to Reappraise Collateral, Request Income Information; and Duty to Inform About Change in Circumstances. The credit limit established for your Account is based upon your income and upon the value of the Collateral. You agree we have the right to reappraise the Collateral and/or demand proof of your current income from time to time upon reasonable notice. You further agree we have the right to increase or lower your credit limit based upon the condition of the Collateral and/or your current income. You agree to provide access to the Collateral at the location where this Agreement was executed during normal business hours and within a reasonable amount of time after demand. You further agree to immediately inform us of any significant change in circumstances regarding your income or the value or condition of the Collateral, including but not limited to, any damage occurring to the Collateral or any significant change in its mechanical condition.

9.      Additional Representations and Warranties. You represent and warrant that you have the right to enter into this Agreement, are at least 18 years of age, and understand that no credit insurance is offered with this Agreement. You represent and warrant that the Collateral is not stolen, has no liens or encumbrances against it, and that you will not attempt to transfer any interest in the Collateral or seek a duplicate certificate of title to the Collateral until any balance is paid in full and you close your account. You further represent that while any balance remains unpaid, you will not permanently remove the Collateral from your current state of residence.

10.  Default. You will be in default under this Agreement: (i) if you fail to make any required payment within 10 days after the Payment Due Date; (ii) you fail to pay on time, or you fail comply with or perform any other obligation under this agreement; (ii) if any representation or warranty made by you to us is false or misleading; (iv) if you begin, or if any other person puts you, in a bankruptcy, insolvency or receivership proceeding; or (v) if you die.

11.  Our Rights in the Event of Default. If you are in default under this Agreement, we may, at our option, do any one or more of the following: (i) declare the whole outstanding balance due on your Account immediately due and payable and proceed to collect it; (ii) foreclose upon our lien and liquidate the Collateral securing this Agreement according to law, including using self-help repossession; (iii) close your Account or lower your credit limit; (iv) exercise all other rights, powers and remedies given by law; and (v) recover from you all charges, costs and expenses, including all collection costs and reasonable attorney's fees incurred or paid by us in exercising any right, power or remedy provided by this Agreement or by law.

12.  Repossession of the Motor Vehicle / Redemption / Sale of the Motor Vehicle. Repossession means that, if you are in default under this Agreement, we can take the Motor Vehicle from you. To take the Motor Vehicle, we can enter your property or the property where the Motor Vehicle is stored, so long as it is done peacefully. If the Motor Vehicle is repossessed, you have the right to get it back (redemption) by paying the entire amount you owe under this Agreement (not just the past due payment) plus the cost of taking and storing the Motor Vehicle and any other expenses that we have incurred. We will send you a written notice of sale at least ten (10) days before selling the Motor Vehicle. If you do not redeem the Motor Vehicle by the date shown on such notice, we can sell it. We will use the net proceeds of sale to pay all or part of your indebtedness to us. The net proceeds of sale means any charges for taking and storing the Motor Vehicle, cleaning and advertising, repairing if necessary, and reasonable attorney's fees and court costs will be subtracted from the selling price. If you owe us less than the net proceeds of sale, we will pay you the difference unless we are required to pay it to someone else. If you owe more than the net proceeds of sale, you will continue to owe this amount.

13.  Joint Liability. If more than one person signs this Agreement, each of you is jointly and severally liable. We may enforce our rights against one of you without affecting our rights as to the others. We may also release one of you without releasing the others.

14.  Cancellation. You may cancel your Account at any time by paying the entire New Balance reflected on your last statement prior to the due date reflected on that statement, plus any additional Cash Advances made to you subsequent to that statement. In addition to our right to cancel your Account upon default, we may suspend making future cash advances on your Account at any time and in our sole discretion, if we in good faith believe that we are in jeopardy of not being repaid as agreed per the terms of this Agreement, provided that in the case of such suspensions made pursuant to this paragraph, you will be allowed to repay any remaining balance over time, pursuant to this Agreement. If we cancel your account or suspend cash advances on your account, we will notify you in writing.

15.  Amendments. We can change any of the terms of this Agreement, including the method of computing all Finance Charges and the applicable Annual Percentage Rate at any time. If we do, however, we will mail you written notice of the change(s) at least 15 days before they become effective. If we make changes to this Agreement and you do not agree with these changes, you must notify us in writing within 15 days and you must pay us with such notice the entire outstanding balance of your Account. If you do not take these actions you will have agreed to the change(s) in the notice. Any change(s) which become(s) effective as to your Account will apply to all the outstanding unpaid indebtedness on your Account, including all cash advances obtained prior to the effective date of the change(s).

16.  General. (i) You agree to deposit a duplicate set of keys to the Collateral upon execution of this Agreement; (ii) you agree to pay us returned check fee of $25.00 each time we accept a check from you, despite our not being under the obligation to do so, if such check is not honored for any reason; (iii) you shall bear the entire risk of loss or damage to the Collateral while it is in your possession; (iv) you agree to indemnify and hold us harmless from any and all claims for property damages or personal injuries arising from your operation of the Collateral, including but not limited to, all judgments.  This constitutes the entire Agreement between the parties and no other agreements, representations or warranties other than those stated herein shall be binding unless reduced in writing and signed by all parties.

17.      Paragraph Headings; Waiver; Governing Law; Enforceability. The paragraph headings in this Agreement are for convenience only and do not limit      of its provisions. You agree that if      rant any waiver, modifications or other indulgence of any kind at any t      it shall apply only to the specify in      nce involved and will not act as a waiver, modification or indulgence for any other or future ace, event or condition.  We may delay enforcing any of our rights under this Agreement without losing them. This Agreement shall be construed, applied and governed by the laws of the Commonwealth of Virginia. The unenforced ability or invalidity of any portion of this Agreement shall not render unenforceable or invalid the remaining portions hereof.

18.      Fair Credit Reporting Act Notice.☐Applicable law permits us to share information with third parties about our credit and account history with you. Applicable law also permits us to share additional information about you and your accounts with companies related to us by common ownership or control ("Affiliates"). We provide this additional information to our Affiliates so that you may receive special offers and promotions from our Affiliates.

19.      Important Notice Regarding Customer Privacy. We collect non-public personal information about you from the following sources:

    Information we receive from you on applications or other forms.
    Information about your transactions with us, our affiliates, or others;
    Information we receive from a consumer-reporting agency.

We do not disclose any nonpublic personal information about our customers or former customers to anyone except to our affiliates and non-affiliated third parties working on our behalf as provided by law. We restrict access to nonpublic personal information about you to those employees who need to know that information and to our affiliates and non-affiliated third parties working on our behalf to provide products and serviced to you, to administer your account, or to collect any money or collateral due us. We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard this nonpublic personal information.

Arbitration Agreement Provision Including Waiver of Jury and Class Action Participation. Arbitration is a method of deciding disputes outside the court system. This arbitration provision governs where and how any claims or disputes you and we may have will be arbitrated instead of litigated in court. THIS ARBITRATION PROVISION MAY SUBSTANTIALLY LIMIT OR AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY! KEEP THIS PROVISION OR A COPY FOR YOUR RECORDS. Certain Definitions. Certain capitalized words used in this Arbitration Provision have special meanings: "Claims" means any dispute, claim or controversy between you and us (including those raised as an initial claim, counterclaim, cross claim, or third party claim) that arises as an result of or have anything to at all to do with: (1) your Motor Vehicle Equity Line of Credit Account, (2) this Agreement, (3) any prior loan, line of credit or agreement you may have had with us or (4) your relationship with us including our attempts to collect your obligation or to repossess the Collateral securing the Account. This term includes (a) disputes relating to any products, including club memberships, or any services offered to you by us, (b) disputes about whether this Arbitration Provision is valid or binding or about whether or when it applies, (c) disputes relating to constitutional provisions, statutes, ordinances, regulations, court decisions, compliance with this Agreement, (d) disputes relating to wrongful acts of every type (whether intentional, fraudulent, reckless, or just negligent,) and (e) any claim or request for injunctive or declaratory relief. This Arbitration Provision applies to claims that arise prior to the effective date of this Arbitration Provision. However, the term "Claim" does not include our right to enforce our security interest and to obtain possession of the Collateral by seeking a repletion judgment or by using self-help, provided such an action seeks only possession of the Collateral and not a personal monetary judgment against you.

When used in this paragraph, "We", "Us" and "Our" do not mean just Dominion Mgt Service DBA CashPoint DEP, Inc. (the "Lender"), but also include: (1) any parent company of the Lender, (2) all companies owned by, controlled by or under common ownership or control with the parent company or the Lender, and (3) all of the employees or other individuals who manage or own these companies. Finally, if either your or we elect to arbitrate any Claim you bring against us, these terms include any other persons or companies who you make Claims against in the same proceeding.

"Administrator" means the American Arbitration Association, JAMS or the National Arbitration Forum. These companies administer arbitration proceedings. The arbitrator will be selected under the Administrator's rules. You can select the Administrator if you give us written notice of your selection with your notice that you electing to arbitrate any claim or within 20 days after we give you notice that we are electing to arbitrate any claim. If you do not select the administrator on time we will select one. If for any reason the administrator you or we select is unable or unwilling to serve or continue to serve as administrator, you will have 20 days to select a different administrator. If we initiate arbitration, we shall pay the entire amount of filing fee and any required deposit required by the Administrator. If you initiate arbitration, you shall pay the first $125 of such costs, and we will pay the remainder. Any arbitration shall take place in the district of your residence or in the district in which this Agreement was executed, at your option. If you cannot afford to pay the fees charged by the Administrator or if you believe that the fees will be prohibitively high or excessive, we will entertain in good faith any reasonable written request by you for us to pay or reimburse you for all or part of such fees. Each party shall bear the expense of the party's attorney's, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law gives the party the right to recover any of those fees from the other party.
Starting Arbitration. You or we can give written notice to the other of an intention to begin arbitration of a Claim or Claims or to require arbitration of the other party's Claim or Claims. This notice can be given by on party even if the other party has begun lawsuit. If such a notice is given, any Claim will be resolved by arbitration under this Arbitration provision and the Administrator's Rules that are in effect at the time the Claim is filed with the Administrator. The arbitrator must be a lawyer with more then 10 years experience or a retired judge. A copy of the Claim form may be obtained from the Administrator or from us. A party who has asserted a Claim in a lawsuit may still elect arbitration with respect to any Claim that is later asserted in the same lawsuit by any other party. All doubts about whether to arbitrate a Claim shall be resolved in favor of arbitration.



We will not elect to arbitrate an individual Claim that you bring against us in "small claims" court either as an initial claim or a counterclaim provided that claim does not seek judgment  in an amount greater that $2,500. However, we may elect to arbitrate a "small claims" court that is later sent or appealed to any different court.

IMPORTANT LIMITATIONS
Waiver of Right to Jury Trial

IF ARBITRATION IS CHOSEN BY EITHER OF US WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES OR BY THIS ARBITRATION PROVISION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU MAY HAVE IF A CLAIM WAS INITIATED IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. THE FEES CHARGED BY THE ARBITRATOR MAY BE HIGHER THAT THE FEES CHARGED BY A COURT. THESE SAME LIMITATIONS APPLY TO USE

CLASS ACTION LIMITATIONS
FURTHER, IF ARBITRATION IS CHOSEN BY EITHER OF US WITH RESPECT TO A CLAIM, YOU MY NOT PARTICIPATE IN A CLAIM ACTION OR A CLASS-WIDE ARBITRATION, EITHER AS A REPRESENTATIVE OR MEMBER OF ANY CLAIM OR CLAIMANTS PERTAINING TO ANY SUCH

CLAIM 'OR ACT, EVEN IF SUCH CLAIM ACTION IS PENDING ON THE EFFECTIVE DATE OF THIS ARBITRATION PROVISION, EXCEPT THAT THIS ARBITRATION PROVISION WILL NOT F .UDE YOUR PARTICIPATION IN A CLAIM WHICH AS ALREADY BEEN CERTIFIED ON THE EFFECTIVE DATE OF THIS ARBITRATION P. ISION AND WHICH RELATES TO CLAIM ARISING FROM A PRIOR AGREEMENT YOU HAD WITH US, AS LONG AS SUCH CERTIFICATION SURVIVED AN ALL APPEALS.

. Unless a class is certified prior to that effective date of this Arbitration Provision and the certification survives any and all appeals, you acknowledge that you will be giving up your right to participate as a member of any such class if we decide to arbitrate your Claim. This means that you will not be able to obtain financial and other benefits that may ultimately be paid to or conferred upon members of any such class.

THERE SHALL BE NO AUTHORITY FOR CLAIMS TO BE ARBITRATED ON A "CLASS ACTION" BASIS. CLAIMS BROUGHT BY ANY BORROWER MY NOT BE JOINED TO CLAIMS BROUGHT BY ANOTHER BORROWER.

Application of Federal Arbitration Act. This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. 1 et seq. The Arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations. This Arbitration Provision shall survive any default as well as the repayment of all amounts borrowed from us, any legal proceeding by us to collect a debt wed by you, an any bankruptcy, to the extent consistent with applicable bankruptcy law. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement.

Contracting Arbitration Administrators. If you have a question about the arbitration administrators Contacting Arbitration Administrators. If you have a question about the arbitration administrators mentioned in as Arbitration Provision or would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows: JAMS, 45 Broadway, 28th floor, New York, NY 10005, www.jamsadr.com, (800) 352-5267; American Arbitration Association. 335 Madison Avenue, New York, NY 10017, www.adr.org, (800) 778-7879; National Arbitration Forum, P.O. Box 501291, Minneapolis, MN 55405, www.arb-forum.com (800) 474-2371.

21.        Your Billing Rights - Keep This Notice for Future Use. This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet as soon as possible at the address listed on your bill. We must hear from you no later that 60 days after we sent the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In the letter please provide the following information:

    Your name and account number.
    The dollar amount of the suspected error.
    Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from you savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

_____        _____

_____        _____

Borrower(s)'s Signature          Date        Lender's Authorized Agent's Signature          Date

## Dominion Mgt Service DBA CashPoint
## 6801 Richmond Hgwy
## Alexandria, VA 22306
## 703-765-2274

### PRIVACY NOTICE

IN COMPLIANCE WITH REGULATIONS ON PRIVACY OF CONSUMER FINANCIAL INFORMATION AS DECLARED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION, THE FEDERAL RESERVE, THE OFFICE OF THE COMPTROLLER OF THE CURRENCY AND THE OFFICE OF THRIFT SUPERVISION, PLEASE REFER BELOW FOR MORE INFORMATION.

*YOUR RIGHT TO FINANCIAL PRIVACY*

YOU HAVE THE RIGHT TO KNOW THE PRIVACY POLICIES AND PRACTICES OF THE FINANCIAL INSTITUTIONS YOU DO BUSINESS WITH IN RESPECT TO INFORMATION SHARING WITH AFFILIATED AND NON-AFFILIATED THIRD PARTIES. THIS NOTICE DESCRIBES THE PRIVACY POLICIES AND PRACTICES OF OUR COMPANY.

*CATEGORIES OF NON PUBLIC PERSONAL INFORMATION WE COLLECT*

- INFORMATION WE RECEIVE FROM YOU ON APPLICATIONS OR OTHER FORMS
- INFORMATION ABOUT YOUR TRANSACTIONS WITH OUR AFFILIATES OR OTHERS; AND
- INFORMATION WE RECEIVE FROM A CONSUMER REPORTING AGENCY.

*CATEGORIES OF NONPUBLIC PERSONAL INFORMATION WE MAY DISCLOSE TO NONAFFILIATED THIRD PARTIES*

WE DO NOT SHARE ANY NONPUBLIC PERSONAL INFORMATION ABOUT OUR CUSTOMERS OR FORMER CUSTOMERS WITH NONAFFILIATED THIRD PARTIES, EXCEPT WHERE PERMITTED BY LAW.

*CATEGORIES OF NONPUBLIC PERSONAL INFORMATION WE MAY DISCLOSE TO SERVICE PROVIDERS AND JOINT MARKETERS*

WE MAY DISCLOSE YOUR NAME AND ADDRESS TO NONAFFILIATED THIRD PARTIES WITH WHICH WE HAVE JOINT MARKETING AGREEMENTS SUCH AS THIRD PARTIES THAT PERFORM MARKETING ON OUR BEHALF, WE WILL ONLY DISCLOSE TO COMPANIES WITH WHICH WE HAVE A CONTRACT STATING THE INFORMATION WILL NOT BE DISCLOSED TO ANY OTHER COMPANIES OR INDIVIDUALS.

*CONFIDENTIALITY AND SECURITY*

WE RESTRICT ACCESS TO NONPUBLIC PERSONAL INFORMATION ABOUT YOU TO THOSE EMPLOYEES WHO NEED TO KNOW THAT INFORMATION TO PROVIDE PRODUCTS AND SERVICES TO YOU. IN ADDITION, WE MAINTAIN PHYSICAL AND PROCEDURAL SAFEGUARDS THAT COMPLY WITH FEDERAL STANDARDS TO GUARD YOUR INFORMATION.

This Notice Must Be Provided Prior To Accepting A Title Loan Application

Dominion Mgt Service DBA CashPoint

6801 Richmond Hgwy

Alexandria, VA 22306

703-765-2274

Monday - Friday 10am - 6pm   Saturday 10am - 3pm

NOTICE TO BORROWER

1 ) Your automobile title will be pledged as security for the loan.  If the loan is not repaid in full, including all finance charges, you may lose your automobile.

2 ) This lender offers short term loans.  Please read and understand the terms of the loan agreement before signing.

I have read the above "NOTICE TO BORROWER" and I understand that if I do not repay this loan, I may lose my automobile.

_____          _____
Borrower                                 Date

_____          _____
Borrower                                 Date

CashPoint
6801 Richmond Highway
Alexandria VA 22306
703-765-2274

## Additional Disclosure
## ESTIMATED STATEMENT

Customer's Name:                    HAROLD RICHARDSON

| | | |
|---|---|---|
| Today's Date | | 4/29/06 |
| Billing Period Closes | | 5/29/06 |
| Payment Due Date | | 6/8/06 |
| Principal Amount | $ | 1,000.00 |
| Annual Fee | $ | 50.00  A |
| Lien Fee | $ | 20.00  B |
| **ESTIMATED** Monthly Interest | $ | 246.58  C |
| First **ESTIMATED** Minimum Payment | $ | 316.58  A+B+C |
| Subsequent **ESTIMATED** Minimum Payment | $ | 246.58 |
| Annual Percentage Rate | | 300% |
| Daily Interest | $ | 8.22 |

WE ACCEPT MONEY ORDERS CERTIFIED FUNDS, VISA AND CASH ONLY.

NO PERSONAL CHECKS

IF YOU PAY OFF YOUR LOAN WITH ANYTHING OTHER THAN CASH, WE
MAY HOLD YOUR TITLE FOR UP TO 30 DAYS

Customer:

_____